# UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **DANIEL LEWIS,** | : | |
| **Plaintiff** | : | |
| | : | **No. 1:12-CV-02208** |
| **v.** | : | |
| | : | **(Judge Kane)** |
| **JOHN WETZEL, <u>et al.</u>,** | : | |
| **Defendants** | : | |

## MEMORANDUM

Presently before the Court is Defendants' motion for summary judgment. (Doc. No. 58.) For the reasons provided herein, the Court will grant Defendants' motion and close the case.

## I. BACKGROUND

### A. PROCEDURAL BACKGROUND

<u>Pro se</u> Plaintiff Daniel Lewis, an inmate currently confined at State Correctional Institution, Graterford, Pennsylvania[1] ("SCI-Graterford"), filed a civil rights complaint pursuant to 42 U.S.C. § 1983 on November 5, 2012 against twenty-three (23) individuals presently or formerly employed by the Pennsylvania Department of Corrections, alleging violations of his federal civil rights. (Doc. No. 1.) At the direction of the Court, Plaintiff filed a voluminous amended complaint on December 17, 2012, which Defendants subsequently moved to dismiss on November 20, 2014. (Doc. No. 11.) On December 21, 2015, the Court granted in part and denied in part Defendants' motion to dismiss. (Doc. No. 46.)

The remaining claims in this case are: (1) Eighth Amendment excessive force claims relating to two separate incidents on April 7, 2011 involving Defendants Lehman, McDowell, McDermott and Dunkel; (2) an Eighth Amendment excessive force claim arising out of an

---

[1] At the time Lewis filed the complaint, he was incarcerated at the State Correctional Institution at Fayette, located in Labelle, Pennsylvania.

incident on June 8, 2011 involving Defendants Corbin, Kyle, Riggleman, and Fogle; (3) a claim premised on allegations of verbal harassment against Defendant Lehman; and (4) a Fourth Amendment claim stemming from episodes in October of 2011 and January of 2011 where Plaintiff was purportedly subjected to nude photography by Defendant Fogle. The remaining Defendants filed an answer to the amended complaint on March 7, 2016 (Doc. No. 50), and then later moved for summary judgment on all remaining claims on November 10, 2016 (Doc. No. 58).

Together with their pending motion for summary judgment, Defendants filed a statement of material facts ("SOM") (Doc. No. 59), an appendix with attached exhibits (Doc. Nos. 60, 62), and a brief in support of their summary judgment motion (Doc. No. 64.) Plaintiff filed his brief in opposition to Defendants' motion for summary judgment (Doc. No. 74), and a statement of opposing facts (Doc. No. 75), on March 27, 2017. The motion, having been fully briefed, is now ripe for disposition.

B.    FACTUAL BACKGROUND

The following facts germane to the present motion are either undisputed or viewed in the light most favorable to Plaintiff, the non-moving party.

### 1.    Fourth Amendment Right to Privacy Claim

Plaintiff claims that he was photographed in the nude following two incidents requiring use of force by correctional officers. (Doc. No. 59 ¶¶ 1-6, 8-13.) The first occurrence transpired on October 15, 2010, when Plaintiff was extracted from the yard by force (id. ¶3), and the second incident occurred on January 3, 2011, when Plaintiff was extracted from his cell for intentionally covering the light in violation of prison rules (id. ¶¶ 11-12). Plaintiff contends that Defendants

forced him to submit to being photographed naked over his objections in violation of the Fourth Amendment. (Doc. No. 74 at 5.)

On January 30, 2011, Plaintiff filed Grievance No. 352504 related to this claim. (Doc. No. 59 ¶ 23.) This grievance was rejected by the Grievance Coordinator for being untimely. (Id. ¶ 24.) Plaintiff appealed the rejection to the Superintendent, and then to the Secretary's Office of Grievances and Appeals ("SOIGA"). (Id. ¶ 26). The rejection of Grievance No. 352504 on timeliness grounds was upheld at all levels of review. (Id. ¶ 28.)

On May 9, 2011, Plaintiff filed a second grievance—Grievance No. 364486—relating to the same issue presented in the first grievance. (Id. ¶¶ 29-30.) The Grievance Coordinator rejected this grievance as untimely, citing Plaintiff's failure to indicate the date of the occurrence. (Id. at ¶ 31.) Plaintiff appealed the rejection to the Superintendent and then to the SOIGA, which was upheld at all levels of review. (Id. ¶¶ 33, 35.)

## 2.    Eighth Amendment Excessive Force Claims

Plaintiff also alleges three separate instances of excessive force. The first two instances of alleged excessive force occurred on April 7, 2011 when Plaintiff was scheduled for a cell transfer. (Doc. No. 59 ¶ 38.) As part of the transfer, Plaintiff was required to submit to a pat search, which is routine in such instances. (Id. ¶ 39.) The pat search and subsequent use of force was captured on video. (Id. ¶ 44; Exhibit I.) During the pat search, Defendant Lehman and Plaintiff were located outside of the cell, while Defendant McDermott stood in Plaintiff's cell. (Id. ¶¶ 45, 46.) Defendant Lehman was conducting the pat search. (Id. ¶ 42.) While conducting the pat search, Defendant Lehman felt a bulge in Plaintiff's sock, which turned out to be plastic wrap, and attempted to retrieve it. (Id. ¶ 43; Doc. No. 60-1, Dep. at pp. 33, 34.) Plaintiff alleges that he then stepped away from Defendant Lehman because Defendant Lehman was being overly

aggressive with the pat search. (Doc. 59 ¶ 47; Doc. No. 60-1, Dep. at pp. 34, 35.) Plaintiff next avers that while his back was turned from Defendant Lehman, Lehman struck Plaintiff in the back of his head, causing his head to hit the metal cell door, resulting in Plaintiff's right eyelid splitting open and bleeding profusely. (Doc. No. 11 at p. 33.) Plaintiff was then forced to the ground where Defendants McDermott and McDowell assisted in securing Plaintiff. (Doc. No. 59 ¶¶ 56, 58.)

Plaintiff was then escorted to the strip cage, which was also captured on video. (Id. ¶¶ 59, 60.) Defendant Lehman secured Plaintiff's left arm during the escort (id. ¶ 61), while Defendant McDowell restrained Plaintiff's shoulders and head (id. ¶ 62). While being escorted, Plaintiff can be heard shouting "he is not supposed to be touching me! He is not supposed to be touching me!" (Id. ¶ 63.) An officer in the video can be heard telling Plaintiff to calm down. (Id. ¶ 64.) Plaintiff then turned toward Defendant Lehman and said "get him off me!" (Id. ¶ 65.) This resulted in Defendants taking Plaintiff to the ground. (id. ¶ 66.)

Plaintiff's final allegation of excessive force occurred on June 8, 2011, during a program review committee meeting that resulted in a recommendation that Plaintiff be placed in the Special Management Unit ("SMU"). (Id. ¶¶ 68, 69.) During this meeting, Defendant Fogle perceived that Plaintiff was becoming agitated and then observed Plaintiff beginning to purse his lips to spit on Officer Corbin. (Id. ¶ 71.) Plaintiff denies that he pursed his lips to spit on Officer Corbin. (Doc. No. 75 ¶ 17.) Based on Defendant Fogle's perceptions, Plaintiff was taken to the ground to gain control of him. (Doc. No. 59 ¶¶ 72, 73.) Following this incident, Plaintiff was assessed by medical as part of routine Department policy (Id. ¶ 76), and it was determined that no treatment was needed. (Id. ¶ 77.)

## II.    LEGAL STANDARD

Federal Rule of Civil Procedure 56(a) requires the court to grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed.R.Civ.P. 56(a).  "[T]his standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).

A disputed fact is "material" if proof of its existence or nonexistence would affect the outcome of the case under applicable substantive law.  Anderson, 477 U.S. at 248; Gray v. York Newspapers, Inc., 957 F.2d 1070, 1078 (3d Cir. 1992).  An issue of material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party.  Anderson, 477 U.S. at 257; Brenner v. Local 514, United Brotherhood of Carpenters and Joiners of America, 927 F.2d 1283, 1287-88 (3d Cir. 1991).

When determining whether there is a genuine issue of material fact, the court must view the facts and all reasonable inferences in favor of the non-moving party.  Moore v. Tartler, 986 F.2d 682 (3d Cir. 1993); Clement v. Consolidated Rail Corp., 963 F.2d 599, 600 (3d Cir. 1992); White v. Westinghouse Electric Co., 862 F.2d 56, 59 (3d Cir. 1988).  In order to avoid summary judgment, however, the non-moving party may not rest on the unsubstantiated allegations of his or her pleadings.  When the party seeking summary judgment satisfies its burden under Rule 56 of identifying evidence which demonstrates the absence of a genuine issue of material fact, the non-moving party is required by Rule 56 to go beyond his pleadings with affidavits, depositions, answers to interrogatories or the like in order to demonstrate specific material facts which give rise to a genuine issue.  Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986).  The party opposing

the motion "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Electric Indus. Co. v. Zenith Radio, 475 U.S. 574, 586 (1986). When Rule 56 shifts the burden of production to the non-moving party, that party must produce evidence to show the existence of every element essential to its case which it bears the burden of proving at trial, for "a complete failure of proof concerning an essential element of the non[-] moving party's case necessarily renders all other facts immaterial." Celotex, 477 U.S. at 323. See Harter v. G.A.F. Corp., 967 F.2d 846, 851 (3d Cir. 1992).

## III.    DISCUSSION

### A.    FAILURE TO EXHAUST FOURTH AMENDMENT RIGHT TO PRIVACY CLAIM

Defendants move for summary judgment as to Plaintiff's Fourth Amendment claim against Defendant Fogle on the basis that Plaintiff has failed to properly exhaust his administrative remedies.

Under the Prison Litigation Reform Act of 1996 ("PLRA"), a prisoner must pursue all available avenues for relief through the prison's grievance system before bringing a federal civil rights action concerning prison conditions. See 42 U.S.C. § 1997e(a); Booth v. Churner, 532 U.S. 731, 741 n.6 (2001) ("[A]n inmate must exhaust irrespective of the forms of relief sought and offered through administrative avenues."); see also Ray v. Kertes, 285 F.3d 287, 295 (3d Cir. 2002) ("Prison officials are likely to have greater legal expertise and, as important, superior access to prison administrative records in comparison to prisoners.") (alteration omitted). The exhaustion requirement is mandatory. Williams v. Beard, 482 F.3d 637, 639 (3d Cir. 2007); Booth, 532 U.S. at 742 (holding that the exhaustion requirement of the PLRA applies to grievance procedures "regardless of the relief offered through administrative procedures"). However, a plaintiff is not required to allege that he has exhausted his administrative remedies;

rather, failure to exhaust is an affirmative defense that must be pleaded and proven by the defendant.

Moreover, the PLRA requires "proper" exhaustion of administrative remedies, meaning strict compliance with procedural rules and deadlines established by the Department of Corrections ("DOC"). Woodford v. Ngo, 548 U.S. 81, 89–95 (2006). Indeed, inmates who fail to fully, or timely, complete the prison grievance process will be barred from subsequently litigating a claim in federal court, unless an equitable consideration arguably warrants the court's review of the claim. Spruill v. Gillis, 372 F.3d 218, 227–32 (3d Cir. 2004); see also Woodford, 548 U.S. at 83-84 (holding that an untimely or otherwise procedurally defective administrative grievance does not satisfy the PLRA's exhaustion requirement). In order to properly exhaust, the prisoner must complete the administrative review process in accordance with the procedural rules governing the prison grievance system. Jones v. Bock, 549 U.S. 199, 218 (2007) (quoting Woodford, 548 U.S. at 88) (citation omitted); see also Strong v. David, 297 F.3d 646, 649 (7th Cir. 2002) ("Section 1997e(a) does not delineate the procedures prisoners must follow."). "Substantial compliance" with the statutory exhaustion requirement is insufficient. Harris v. Armstrong, 149 F. App'x 58, 59 (3d Cir. 2005).

"The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements . . . that define the boundaries of proper exhaustion." Jones, 549 U.S. at 218. Thus, an inmate's "grievances must contain the sort of information that the administrative system requires." Strong, 297 F.3d at 649. If a prison's regulations do not delineate the particular content a grievance must include, "a grievance suffices if it alerts the prison to the nature of the wrong for which redress is sought. . . . [T]he grievant need not lay out the facts, articulate legal theories, or

demand particular relief. All the grievance need do is object intelligibly to some asserted shortcoming." Johnson v. Testman, 380 F.3d 691, 697 (2d Cir. 2004) (quoting Strong, 297 F.3d at 650).

DC-ADM 804 establishes a three-tiered administrative remedy process by which an inmate may seek formal review of an array of issues arising during the course of confinement. 37 Pa. C.S. § 93.9(a); see also DOC Policies, Policy No. DC-ADM 804, Inmate Grievance System, available at www.cor.state.pa.us. Specifically, the grievance process consists of an initial review of a grievance filed with the Facility's Grievance Coordinator within fifteen (15) days from the date of the underlying incident, an appeal to the Facility Manager of the institution or designee within fifteen (15) days of an adverse decision from the Facility's Grievance Coordinator, and an appeal to the SOIGA within fifteen (15) days of the Facility Manager's adverse decision for a final review. See Booth v. Churner, 206 F.3d 289, 293 n.2 (3d Cir. 2000) (outlining Pennsylvania's grievance review process).

While it "is beyond the power of t[he] court . . . to excuse compliance with the exhaustion requirement, whether on the ground of futility, inadequacy or any other basis," the Third Circuit has recognized a narrowly-defined exception to the exhaustion requirement. Nyhuis v. Reno, 204 F.3d 65, 73 (3d Cir. 2000). Specifically, where the actions of prison officials directly cause the procedural default, the inmate may not be held to strict compliance with the exhaustion requirement. See generally Camp v. Brennan, 219 F.3d 279 (3d Cir. 2000). However, an inmate's failure to exhaust will only be excused upon a showing from the inmate that "he was misled or that . . . some extraordinary reason . . . prevented [him] from complying with the statutory mandate." Warman, 49 F. App'x at 368. An allegation that the DOC policies were not

clearly explained to the inmate, alone, does not excuse the inmate from properly exhausting his administrative remedies.  Casey v. Smith, 71 F. App'x 916 (3d Cir. 2003).

In the matter sub judice, the record reflects that Plaintiff failed to properly exhaust his administrative remedies as to Grievance Nos. 352504 and 36448.  Indeed, as Plaintiff acknowledges, Grievance Nos. 352504 and 36448 were denied at each step of the administrative appeals process as untimely.  Despite the untimely filings, however, Plaintiff argues that equitable considerations justify the Court excusing his procedural default and reviewing his Fourth Amendment claim on its merits.  First, he argues that he was unable to properly file a timely grievance concerning the nude photographs taken of him because he was unaware of DOC Policy 6.3.1 (Relevant Policy on Photographing After Use of Force),[2] at the time of the alleged incidents.  (Doc. No. 74 at 5.)  Second, Plaintiff argues that he was deceived by officers when they told Plaintiff that the photographs were taken pursuant to policy.  Finally, Plaintiff argues that because he was placed on property restriction and denied access to the grievance system, he was unable to file his grievance in time.  (Id. at 7, 8.)

The Court finds Plaintiff's claims to be untenable.  As Defendants have persuasively argued,  Plaintiff's unawareness of the DOC's policy on the taking of nude photographs, and Defendants' representations regarding the DOC's procedures of photographing an inmate following an incident where force is used, would not have prevented Plaintiff from timely filing a grievance concerning the nude photographs.  Indeed, by his own admission,  Plaintiff was aware that photographs were taken of him on October 15, 2010, and on January 3, 2011.  Moreover, with respect to Plaintiff's argument that he was placed on property restriction and

---

[2] The policy provides that "following any use of force involving physical contact to obtain control of the inmate, the Medical Department shall take at least four sets of viable photos of each identified injury site/location or lack of injury on the inmate's body."

denied access to the grievance system for a short period of time, which rendered his administrative remedies unavailable, the Court notes that while DC-ADM 804 provides for a "grievance restriction" status, it still permits an inmate to file no more than one grievance each fifteen working days. DC-ADM 804 §3.A.1.c. The mere fact that an inmate is placed on such a restriction does not render administrative remedies unavailable, as the inmate is still permitted to file a limited number of grievances. See Cummings v. Crumb, 347 F. App'x 725, 727 (3d Cir. 2009); Ball v. Struthers, No. 1:11-CV-1265, 2012 WL 2946785, at *11 (M.D. Pa. July 19, 2012); Daniel v. Wetzel, No. 1:15-CV-00850, 2017 WL 1356365, at *7 n.8 (M.D. Pa. March 22, 2017). Accordingly, as Plaintiff's grievance was rejected as untimely, the grievance was not properly exhausted, and his claim based on the incidents raised by the grievance is therefore barred.

B.      EIGHTH AMENDMENT EXCESSIVE FORCE CLAIMS

The Eighth Amendment's protection against cruel and unusual punishment is the "primary source of substantive protection in cases where an inmate challenges a prison official's use of force as excessive and unjustified." Brooks v. Kyler, 204 F.3d 102, 105 (3d Cir. 2000). The test for whether one has an excessive force claim is "whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." Giles v. Kearney, 571 F.3d 318, 326 (3d Cir. 2009) (quoting Whitley v. Albers, 475 U.S. 312, 319 (1986)). In making this determination, courts are tasked with evaluating the following Whitley factors: "(1) the need for the application of force; (2) the relationship between the need and the amount of force that was used; (3) the extent of injury inflicted; (4) the extent of the threat to the safety of staff and inmates, as reasonably perceived by the responsible officials on the basis of the facts known to them; and (5) any efforts made to

temper the severity of a forceful response." Id. (citing Whitley, 475 U.S. at 321); see also

Brooks, 204 F.3d at 102.  The United States Supreme Court has stated:

> [W]hen prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency are always violated . . . whether or not significant injury is evident.  Otherwise, the Eighth Amendment would permit any physical punishment, no matter how diabolic or inhuman, inflicting less than some arbitrary quantity of injury."

Wilkins v. Gaddy, 559 U.S. 34, 37 (2010) (quoting Hudson v. McMillian, 503 U.S. 1,

(1992)).  Additionally, de minimis use of physical force does not qualify as excessive

force unless the force is "repugnant to the conscience of mankind."  Brooks, 204 F.3d at

107 (citing Hudson, 503 U.S. at 6).  See generally Wilkins, 559 U.S. 34 (2010)

(clarifying that de minimis force is the dispositive issue, not de minimis injury).  Not

"every malevolent touch by a prison guard gives rise to a federal cause of action."

Hudson, 503 U.S. 9.   With these legal tenets in mind, the Court turns to its consideration

of the Whitley factors to resolve the "core judicial inquiry" of "whether force was applied

in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to

cause harm."  Hudson, 503 U.S. at 7.

### 1.      Eighth Amendment Claims relating to the April 7, 2011 Incidents

Plaintiff asserts two instances of alleged excessive force that transpired on April 7, 2011,

the date of his scheduled cell transfer.  Specifically, Plaintiff premises liability on allegations that

Defendants subjected Plaintiff to excessive force during his pat-down search prior to his

scheduled cell transfer and during transport to his new cell.  Defendants move for summary

judgment on Plaintiff's claims of excessive force under the Eighth Amendment with respect to

the April 7, 2011 incidents.

With regard to the first <u>Whitley</u> factor, the need for application of force, Defendants submit that reasonable force was used in order to subdue and control Plaintiff during the April 7, 2011, pat-down search and transport incidents. Defendants rely on the videotape recording of the two alleged instances of excessive force as well as the declaration of Defendant Lehman. As it relates to the April 7, 2011 pat search incident, the videotape clearly shows Defendant Lehman outside of the cell conducting the pat search. (Doc. No. 62, Ex. I, videotape.) Defendant McDowell can be seen carrying a bag up the steps on the left hand side of the video screen. (<u>Id.</u>) Defendant McDermott can be viewed inside Plaintiff's cell while Defendant Lehman conducts the pat search. (<u>Id.</u>) In the midst of this pat search, Defendant Lehman can be observed detecting a bulge in Plaintiff's sock. (Doc. No. 59 ¶ 43.) While Defendant Lehman is bent over, attempting to remove the bulge from Plaintiff's sock, the video shows Plaintiff pulling his leg away from Defendant Lehman. (Doc. No. 62, Ex. I.) The video then shows Defendant Lehman respond by grabbing Plaintiff by the arm and securing him to the cell door. (Doc. No. 62, Ex. I.) After seconds of struggling, Defendant Lehman then brings Plaintiff to the ground where Defendant McDermott and McDowell can be observed assisting by holding Plaintiff down to secure him. (<u>Id.</u>) The video does not show Defendant Lehman punching or striking Plaintiff, as Plaintiff has alleged. (<u>Id.</u>)

In addition to the video, Defendants rely on Defendant Lehman's declaration, wherein he represents that he attempted to secure Plaintiff against the cell door when Plaintiff began resisting his attempts to remove what he believed to be contraband from Plaintiff's sock, but Plaintiff continued to resist by trying to turn towards, and push into, Lehman. (Doc. No. 60-11, Ex. M, ¶¶ 10, 11) Defendant Lehman further declares that he pulled Plaintiff away from the door and took him to the ground to gain better control of him. (<u>Id.</u> ¶ 12.) With regard to the

transport incident, the video shows Defendant Lehman holding Plaintiff's left arm during the escort and Defendant McDowell controlling Plaintiff's arms and head. (Doc. No. 62, Ex. I.) The video also shows Plaintiff yelling at the officers, "He is not supposed to be touching me! He is not supposed to be touching me!" (Id.) An officer can be heard on the video telling Plaintiff to calm down. (Id.) The video then shows Plaintiff turn toward Defendant Lehman and shout "Get him off me!" (Id.) The officers then take Plaintiff to the ground. (Id.)

Plaintiff has not produced any evidence to rebut Defendants' recitation of the material facts as substantiated by the videotape recording and sworn declaration. Indeed, Plaintiff does not refute that Defendant Lehman conducted a pat search of him and found a bulge in his sock, nor does he contest that he did, in fact, step away from Lehman during the pat search. Plaintiff also does not challenge Defendants' assertion that he failed to heed Defendants' warnings to calm down during the transport. Thus, in the absence of evidence to the contrary, the Court concludes that there was some need for the application of force in order to ensure that Plaintiff complied with orders and to minimize the security threat and safety risk created by Plaintiff's resistance to the pat-down search and transport.

The second Whitley factor considers the relationship between the need and amount of the force used. Here, the videotape recording of the pat-down shows Defendant Lehman struggle to gain control over Plaintiff upon discovering a bulge in his sock before taking Plaintiff to the ground. The transport videotape depicts Plaintiff being resistant and failing to comply with Defendants' warnings. Plaintiff does not provide any rebuttal evidence; rather, he simply denies that he was being resistant. The video evidence clearly refutes this. See Scott v. Harris, 550 U.S. 372, 380 (2007) (explaining that where a party's "version of events is so utterly discredited by the record that no reasonable jury could have believed him," the court ruling on a motion for

summary judgment should not rely "on such visible fiction; it should [view] the facts in the light depicted by the videotape." ). Accordingly, the Court finds that the second Whitley factor supports a finding that Defendants are entitled to summary judgment because the uncontroverted evidence reflects that the amount force applied to secure Plaintiff during the pat search and transport were moderate and proportionate to the need to restrain Plaintiff and effectuate Plaintiff's compliance with direct orders.

The third Whitley factor requires the Court to consider the extent of the injury inflicted. While a significant or serious injury is not required to support an excessive force claim, Hudson v. McMillian, 503 U.S. 1, 4 (1992), "[a]n inmate who complains of a 'push or shove' that causes no discernable injury almost certainly fails to state a valid excessive force claim." Wilkins v. Gaddy, 559 U.S. 34, 38 (2010) (citation omitted). Here, Plaintiff alleges he suffered face injuries, a foot injury, and a slight concussion during the pat search and an aggravation of these injuries when he was taken to the ground during the transport to the strip cage. Plaintiff asserts that he received these injuries when Defendant Lehman struck him in the head from behind. However, the video clearly refutes Plaintiff's allegations that Defendant Lehman struck Plaintiff in the head. Nonetheless, Plaintiff has attached to his statement of opposing facts a medical incident/injury report (Doc. No. 75 at 60), which supports that he had lacerations above his right eyebrow, a small abrasion on his right hand, a small superficial abrasion on both knees, and to his left toenail. (Id.) The report indicates that all areas were cleansed and Steri strips were applied to the area above his right eyebrow. (Id.) Defendants do not provide any evidence to refute these injuries.

In Hudson, the Supreme Court considered similar injuries suffered by a prisoner-plaintiff and deemed the injuries to be "minor" although "not de minimis for Eighth Amendment

purposes." 503 U.S. at 4.  The Court finds that Plaintiff's injuries, while not de minimis, were certainly minor in nature.  Moreover, the videotape evidence clearly shows that these injuries were not caused by any sadistic or malicious use of force applied by Defendants, but rather, resulted due to Plaintiff's own actions and resistance of Defendants' attempts to subdue him. See Bynum v. Thiroway, No. 3:CV:06-2272, 2008 WL 2704619, at *5 (M.D. Pa. July 7, 2008) (granting summary judgment in favor of Defendants on excessive force claim where Plaintiff suffered head laceration requiring only a few sutures); Hardwick v. Packer, No. 1:12-CV-1936, 2013 WL 4016495, at *14-*15 (M.D. Pa. Aug. 6, 2013) (granting summary judgment in favor of Defendants on excessive force claim where Plaintiff suffered 2.5 cm laceration to his left eyebrow and had to be sealed using dermabond).  Thus, the Court finds that this factor militates in favor of granting summary judgment, as no reasonable jury could conclude from Plaintiff's injuries that malicious and sadistic force was used as required to support an Eighth Amendment excessive force claim.

The fourth Whitley factor is the extent of the threat to the safety of staff and inmates, as reasonably perceived by the responsible officials on the basis of the facts known to them.  Giles, 571 F.3d at 326.  As Defendant Lehman attests in his sworn declaration, he perceived Plaintiff's step backward when Defendant Lehman was hunched over, attempting to retrieve  the item stored in Plaintiff's sock, as Plaintiff readying himself to kick Defendant Lehman.  (Doc. No. 60-11, Ex. M, ¶¶ 10-12.)  Plaintiff does not refute that Lehman found a bulge in his sock or that Plaintiff did, in fact, step away from Lehman during the pat search.  With regard to the transport incident, the video shows Plaintiff being completely uncooperative and resisting Defendants while they were attempting to transport him to the strip cage.  (Doc. No. 62, Ex. I.)  It further depicts Plaintiff repeatedly refusing to obey several orders to stop resisting.  (Id.)  It was not until

Plaintiff's repeated refusal to obey orders and then his attempt to turn towards the Defendants that Plaintiff was taken to the ground in order to control and secure him. (Id.) See Mitchell v. Dodrill, No. 1:CV-08-01414, 2011 WL 111746, at *4 (M.D. Pa. Jan. 13, 2011) (granting summary judgment in favor of Defendants on Plaintiff's use of force claim where Plaintiff refused to comply with Defendants' orders and only then used force necessary to restore order and safety); Young v. Coleman, No. 10-CV-786, 2012 WL 2327917, at *10 (W.D. Pa. Apr. 16, 2012) (granting summary judgment in favor of Defendant on Plaintiff's use of excessive force claim because Defendant perceived the plaintiff to be a threat as he was yelling, thrashing his hands around, disobeying orders, and physically resisting; because the situation could have easily escalated into something much more serious; and because the other officers tried to temper the severity of their response by giving repeated verbal commands that Plaintiff ignored). Taking into account the fact that Plaintiff was surrounded by corrections officers during both incidents and fully restrained during transport, that Defendant Lehman was in a vulnerable position when conducting the pat-down search, and that Plaintiff did not appear to make any effort to assault a corrections officer during the transport, and further taking into account Plaintiff's resistance to complying with direct orders and Defendants perceptions of these incidents, the Court finds that the extent of the threat to Defendants was not substantial, which cuts against granting summary judgment in Defendants' favor.

The fifth and final Whitley factor concerns the efforts made to temper the severity of a forceful response. Again, Defendant Lehman provides in his declaration that he attempted to control and secure Plaintiff against the cell door but Plaintiff continued to resist by trying to turn towards and push into Lehman. (Doc. No. 60-11, Ex. M, ¶¶ 10, 11.) Having no other direction to take Plaintiff and in order to retain control of him, Lehman declares that he then pulled

Plaintiff away from the door, and took him to the ground to gain better control of him.  (Id. ¶ 12.)
This is consistent with the video evidence in the record before this Court.  Plaintiff does not offer
evidence to refute Defendants' recitation of the events forming the basis of this claim.  Accepting
as true the undisputed facts as to this factor, the Court finds that Defendant Lehman tempered the
severity of the force used to control Plaintiff by first attempting to secure him against the cell
door, and then using appropriate force to take Plaintiff to the ground to better control him.  With
regard to the transport incident, the video evidence and record before this Court show
Defendants' attempt to temper the severity of the force used to control Plaintiff by first warning
Plaintiff to calm down, but to no avail.  Accordingly, this fifth factor also weighs in favor of
Defendants.

Examining the circumstances of this case under the Whitley factors, the Court finds that
no reasonable trier of fact could conclude that Defendants' application of force relative to the
April 7, 2011 pat-down search and transport incidents was excessive in violation of Plaintiff's
Eighth Amendment rights.  Plaintiff has not presented any evidence that would establish that
there is an issue of material fact as to whether Defendants acted to "maliciously and sadistically
cause harm" to him.  Hudson, 503 U.S. at 7.  Instead, the evidence establishes that Defendants
used the proper amount of force necessary to preserve internal order and to secure Plaintiff.
Accordingly, the Court will grant summary judgment on Plaintiff's Eighth Amendment claims
stemming from the April 7, 2011 pat-down search and transport incidents in favor of Defendants.

> **2.      Eighth Amendment Excessive Force Claim Related to June 8, 2011
>            Incident**

Plaintiff's final claim of excessive force pertains to an incident that allegedly transpired
on June 8, 2011, during a program review committee meeting where the committee
recommended that Plaintiff be placed in the Special Management Unit ("SMU").  (Id. ¶ 68, 69.)

Specifically, Plaintiff alleges that while he was attempting to object to the committee's reasons for his placement in SMU, Defendant Fogle gave a command to take Plaintiff to the ground. (Doc. No. 11, at 46, 47.)  Plaintiff alleges that he was slammed face first to the floor and a spit hood was forcefully placed on him.  (Id. at 47.)  Defendants move for summary judgement as to this claim of excessive force on the basis that Defendants had a reasonable perception that Plaintiff was about to spit on Officer Corbin, which justified the use of force.  (Doc. No. 59, ¶¶ 71, 73; 60-4, Fogle Decl.) Furthermore, Defendants argue that the force applied in securing a combative Plaintiff was de minimus.  (Doc. No. 64 at 27, 28.)  Plaintiff responds that there exists a genuine dispute of material fact precluding the Court from granting Defendants' motion for summary judgment. Specifically, Plaintiff contends that there was never any need for the application of force because he did not purse his lips to spit at Officer Corbin.  (Doc. No. 74 at 20.)

Reviewing the Whitley factors in conjunction with the record evidence, the Court finds that Defendants are entitled to judgment on this claim.  With respect to the need for application of force and the threat as reasonably perceived by responsible officials on the basis of facts known to them, factors one and four, Defendants submit the declaration of Defendant Fogle, who represents that: (1) Plaintiff was becoming increasingly agitated and argumentative at the review committee meeting (Doc. No. 59, ¶¶ 71, 73; 60-4, Fogle Decl.); (2) that he observed Plaintiff pursing his lips in an attempt to spit at Officer Corbin, who was engaging in heated conversation with Plaintiff regarding the recommendation that Plaintiff be placed in the SMU  (Id.); and (3) immediately upon observing Plaintiff purse his lips,  he directed the officers to place Plaintiff on the ground to gain control of him to prevent Plaintiff from spitting on or otherwise assaulting Officer Corbin.  (Id.) Defendants also refer to Plaintiff's deposition testimony, which they argue

bolsters Defendant Fogle's representation that he reasonably believed from Plaintiff's overall behavior, communications with Officer Corbin, and facial expression, that Plaintiff was about to spit on Officer Corbin, necessitating the use of force to offset what he perceived to be a security threat.[3] In response, Plaintiff does not contest that he was aggravated during the program review committee meeting and was arguing with Officer Corbin regarding the recommendation to place him in the SMU. Rather, Plaintiff relies on his own unsupported assertion that he had no intention of spitting on Officer Corbin. See Celotex Corp. v. Catrett, 477 U.S. 317, 325 (holding that unsupported assertions, conclusory allegations, or mere suspicions are insufficient to create a genuine issue of material fact to preclude summary judgment).

Even accepting Plaintiff's position that he had no intention of spitting, the Court finds that the first and fourth Whitley factors support granting summary judgment in favor of Defendants, as no reasonable fact-finder could conclude from the evidence that Defendant Fogle was unreasonable in his belief that Plaintiff's conduct in that moment posed a moderate threat to security, or was unreasonable in directing that Plaintiff be placed on the ground to gain control of him in light of his observations of Plaintiff's body language, which indicated that Plaintiff was becoming increasingly agitated and combative. See Young, 2012 WL 2327917, at *10 (granting summary judgment in favor of Defendant on Plaintiff's use of excessive force claim because Defendant perceived the plaintiff to be a threat); see also Whitley, 475 U.S. at 320-21 (providing that given the "ever-present potential for violent confrontation and conflagration" in prison settings, measures taken by prison officials to prevent internal disturbances are "accorded wide-

---

[3] Specifically, Plaintiff, in recounting the events leading up him being taken to the ground, testifies that he felt as though he was being verbally assaulted at the meeting and felt like "it wasn't worth listen[ing] to what [Officer Corbin] was saying." (Doc. No. 60-1 at 46, Deposition.) He further testifies that he felt as though Officer Corbin was "trying to jump in and interfere [with] what [he was] trying to say." (Id. at 47.)

ranging deference" and the court must refrain from "critiqu[ing] in hindsight decisions necessarily made in haste, under pressure, and frequently without the luxury of second chance").

The second <u>Whitley</u> factor, the relationship between the need and amount of force used, slightly weighs in favor of Defendant. In his sworn declaration, Defendant Fogle represents that he gave the order to place Plaintiff on the ground after he perceived Plaintiff become agitated at the review committee meeting and then begin to purse his lips so as to spit. (Doc. No. 59, ¶¶ 71, 73; 60-4, Fogle Decl.) Defendant Fogle maintains that bringing Plaintiff to the ground was necessary in order to gain control over Plaintiff and to prevent Plaintiff from spitting on an officer. (<u>Id.</u>) In response, Plaintiff provides no rebuttal evidence but rather, merely offers his unsupported assertion in his brief in opposition that he was not going to spit at Officer Corbin. (Doc. 75 ¶ 17.) Regardless of whether Plaintiff was actually going to spit on Officer Corbin, the undisputed material facts contained in the record support a finding that the force applied was proportionate to the need to thwart Plaintiff from potentially spitting on Officer Corbin, as reasonably perceived by Defendant Fogle. <u>See</u> <u>Hardwick</u>, 2013 WL 4016495, at *14-*15 (finding use of force in taking Plaintiff to the ground was not excessive when Plaintiff turned and spit at officer).

The third <u>Whitley</u> factor—the extent of injury inflicted—weighs heavily in support of granting summary judgment in Defendants' favor on this claim. The uncontroverted factual record supports that Plaintiff suffered a slightly swollen wrist but retained full range of motion, and that Plaintiff's right side of his forehead was slightly red. (Doc. No. 60-9, Medical Records Supervisor Passaro Decl.) Further, the record reflects that Plaintiff was examined by medical staff following the incident and was informed that no treatment was needed. (<u>Id.</u>) Based on this undisputed evidence, the Court finds that the injuries inflicted by Defendants' application of

force were <u>de minimus</u> in nature, thus supporting the entry of summary judgment in favor of Defendants.

The fifth <u>Whitley</u> factor does not weigh in favor of or against a finding that the force employed to subdue the Plaintiff was excessive, as the Court's consideration of the preceding four factors compels a finding that the force applied was not greater than that necessary to subdue Plaintiff.  Moreover, the record does not support that any additional efforts were made to temper the severity of the force needed to prevent Plaintiff from spitting on Officer Corbin.

In evaluating the relevant <u>Whitley</u> factors in relation to the facts surrounding the June 8, 2011 incident, the Court finds that the uncontroverted evidence in the record fails to support a claim of excessive use of force in violation of the Eighth Amendment.  Specifically, the <u>de minimus</u> injury to Plaintiff, coupled with the undisputed evidence submitted by Defendants of Plaintiff's conduct during the program review committee meeting that led Defendant Fogle to believe that Plaintiff was about to assault Officer Corbin, provides no basis upon which a reasonable fact finder could infer that Plaintiff was subjected to excessive force.  Accordingly, the Court will grant summary judgment on Plaintiff's Eighth Amendment excessive force claim relating to the June 8, 2011 incident in favor of Defendants.

C.    <span style="font-variant: small-caps">Verbal Harassment Claim Against Defendant Lehman</span>

Plaintiff's remaining verbal harassment claim against Defendant Lehman also fails. Claims of verbal abuse or threats, unaccompanied by evidence of actual physical injury or actionable misconduct, do not give rise to a viable consitutional claim.  <u>Robinson v. Taylor</u>, 204 F. App'x 155, 156 (3d Cir. 2006) ("It is well settled that verbal harassment of a prisoner, although deplorable, does not violate the Eighth Amendment.").  As described in detail above, Plaintiff has failed to create a genuine issue of material fact as to his entitlement to relief on his

excessive force claims. As a result, Plaintiff's verbal harassment claim necessarily fails. <u>See</u> <u>Prisoners' Legal Ass'n v. Roberson</u>, 822 F. Supp. 185, 189 (D.N.J.1993) ("[V]erbal harassment does not give rise to a constitutional violation enforceable under § 1983."); <u>Balliet v. Whitmire</u>, 626 F. Supp. 219, 228-29 (M.D. Pa. 1986) ("Verbal abuse is not a civil rights violation . . . .") <u>aff'd</u>, 800 F.2d 1130 (3d Cir. 1986). Accordingly, the Court will grant Defendants' motion for summary judgment as to Plaintiff's verbal harassment claim against Defendant Lehman.

**IV.    CONCLUSION**

For the foregoing reasons, the Court will grant Defendants' motion for summary judgment. (Doc. No. 58.) An appropriate Order follows.